IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                            NO. 11-CR-1876 WJ

PAULINE YAZZIE,

    Defendant.

**MEMORANDUM OPINION AND ORDER DENYING
DEFENDANT'S SECOND MOTION TO SUPPRESS STATEMENTS**

THIS MATTER comes before the Court on Defendant Pauline Yazzie's Second Motion to Suppress Alleged Statement Purportedly Made to the FBI on July 8, 2010 (**doc. 82**), filed April 16, 2012. Defendant argues that her statements should be suppressed because her confession was involuntary. After considering the factual context of Defendant's confession, the Court finds that her confession was voluntary, and therefore her motion to suppress shall be **DENIED**.

## BACKGROUND

On the morning of December 2, 2009, law enforcement personnel responded to a 911 call by Defendant and found Jasper Barber, Defendant's boyfriend, dead in their home. Barber died of a stab wound to his chest; he was seated on a couch in their livingroom, and on his leg was a black knife with blood on the blade.

Later that day Defendant was taken into custody and questioned by the FBI Case Agent, Dustin Grant. The questioning was video taped. Defendant was advised of her rights, and signed a form waiving her rights. She told Agent Grant that she and Barber had been drinking

and they returned home in the early hours of December 2, 2009.  Once home, while she was occupied in another room, she heard Barber say "I'll always love you" and then heard him moan on the couch.  She noticed a knife on his leg, and called 911.  She assumed that he had stabbed himself, but had no explanation for why he would have done so.

The next day Defendant was released from custody.  She was questioned a second time on April 27, 2010.  Again Agent Grant advised her of her rights, and Defendant waived her rights and answered questions.  Her answers were materially similar to those given on December 2, 2009; she maintained that Barber had stabbed himself, and that she had not been involved in any way with his death.

Defendant voluntarily agreed to undergo a polygraph test.  The test was scheduled for July 8, 2010.  Defendant arrived at the Bureau of Indian Affairs ("BIA") office in Shiprock and was ushered into the interview room by FBI Special Agent Jennifer Sullivan.  No part of the polygraph test or questioning was recorded.  Defendant signed two consent forms, including a waiver of Fifth Amendment rights.  After a lengthy pre-test interview, Agent Sullivan conducted the polygraph test, and the polygraph equipment indicated that Defendant was lying about Barber's death.  Agent Sullivan confronted Defendant with the results, and began to question her about the events of the night.  Eventually, Defendant confessed to the killing.  She stated that Barber was abusive, and that she had stabbed him with his own knife out of fear, in order to prevent him from beating her.

## LEGAL STANDARD

The requirement that statements be voluntary comes from the rights against self-incrimination and the standards of due process of law, both flowing from the Fifth Amendment to the United States Constitution.  *Oregon v. Elstad*, 470 U.S. 298, 304 (1985).  A statement is

involuntary and in violation of due process if a defendant's will was overborne by the circumstances surrounding his confession. *United States v. Lamy*, 521 F.3d 1257, 1261 (10th Cir. 2008). The voluntariness of a confession is determined by considering the totality of the circumstances in which it was made. *United States v. Perdue*, 8 F.3d 1455, 1466 (10th Cir. 1993). Factors to be considered in assessing the voluntariness of a confession are: the age, intelligence, and education of the defendant; the length and nature of questioning; the length of the detention; the use or threat of physical punishment; whether Miranda safeguards were administered; and the location of the interrogation. *Lamy*, 521 F.3d at 1262; *Perdue*, 8 F.3d at 1466. In addition, courts must consider the conduct of the police officers. *Id.* "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986); *see also United States v. Erving L.*, 147 F.3d 1240, 1249 (10th Cir. 1998).

## DISCUSSION

Defendant has asked that the Court rule on her current motion based upon the factual record already established for her previous motion to suppress based upon violation of her Fifth Amendment right to an attorney.[1] Accordingly, the Court will rely on the factual showings during the hearings held before the Court on Defendant's previous motion, and upon the arguments of the parties in their briefs upon the matter.

At the outset, the Court notes that Defendant makes factual assertions that the Court has already ruled on: for instance, Defendant again asserts that she asked for an attorney several

---

[1] The Court denied Defendant's previous motion to suppress. (*See* doc. 73.)

times during the interrogation.[2]  Defendant has presented no additional evidence on the matter, and the Court has no reason to reconsider its previous factual finding; therefore the Court again determines that Defendant did not ask for an attorney during the course of the interview.

The remaining factual disputes of importance are these:

(1)   Whether Agent Grant demanded that Defendant submit to a polygraph examination;

(2)   Whether Defendant requested to see her family and that she be allowed to go home, and Agent Sullivan denied this request;

(3)   Whether Agent Sullivan told Defendant that unless she confessed, she would be picked up by the U.S. Marshals and taken to jail;

(4)   Whether Defendant stated that she would "cooperate with the FBI today" and that she would admit that "she stabbed her husband if that's what it takes to go home, but that she would not lie in court";

(5)   What time the interview ended.

The Court remains convinced of its previous credibility determination: Agent Sullivan appeared to be truthful and reliable, and Defendant appeared to be untruthful.  (*See* doc. 73 at 4.) Accordingly, the Court finds that the Government has proven by a preponderance of the evidence that:

(1)   Defendant voluntarily agreed to take the polygraph examination, and was not forced, pressured, or coerced into doing so by the FBI special agents;

(2)   Agent Sullivan did not prevent Defendant from seeing her family or going home, and did not threaten to have Defendant arrested by the Marshalls;

(3)   Defendant did not make any statement suggesting that her confession was false or that she was just telling the agents what they wanted to hear;

(4)   Defendant left the interview room at some time between 4:30 and 5:00 p.m.;

---

[2] The Court ruled that the preponderance of the evidence showed that Defendant did not request an attorney during the interview with Agent Sullivan on July 8, 2010.  (Doc. 73 at 4.)

>   (5)   The general tone of the interview both before and after the polygraph test was civil, conversational, and in no way coercive.

In light of these facts, the Court must evaluate the appropriate factors in order to determine whether Defendant's confession was voluntary.

On July 8, 2010, Defendant was thirty-eight years of age, had a highschool-level education, was self-employed, in good health, and was taking no medications.  Though she struggles with alcoholism, she was not under the influence of alcohol during the interview on July 8, 2010.  No evidence was presented to the Court that would support a conclusion that Defendant was not "capable of understanding the agents' questions and assessing the risks of answering or declining to answer those questions."  *U.S. v. Lamy*, 521 F.3d 1257, 1262 (10th Cir. 2008).

The polygraph test took place in the BIA offices in Shiprock.  The interview room contained a two-way window, and appears in other respects to have been unremarkable.  Defendant was not detained prior to her confession; she arrived at the Shiprock office on her own, being dropped off by a family member.  As to the length of the polygraph test and subsequent interview, Defendant arrived at the location for the polygraph examination on July 8, 2010, at 9:50 a.m.  Agent Sullivan began the process of the polygraph interview at 10:50 a.m., and the conduct of the polygraph lasted approximately three hours.  After the test, Agent Sullivan confronted Defendant with her failure of the polygraph, and asked Defendant why she was lying.  After approximately an hour of further discussion, Defendant confessed to having stabbed Jasper Barber, and further discussion of the details, with Agent Grant and Defendant's sister present, lasted until the interview terminated, which occurred approximately between 4:30 and 5:00 p.m.  Therefore, although the interview itself was not brief, neither was it so long,

arduous, or otherwise difficult that it could have overborn Defendant's volition.

Defendant was not subject to physical force, nor the threat of physical force during the interrogation.  Agent Sullivan provided a thorough explanation of Defendant's rights under Miranda, and Defendant indicated that she understood her rights.  Other than Defendant's allegations that she requested and was denied the advice of counsel, which the Court has already ruled on (*see* doc. 73 at 4), Defendant does not allege that the Miranda Safeguards were absent or that the Miranda warnings were faulty.

The conduct of the interview can be described as cordial, at least up until Agent Sullivan confronted Defendant with her failure of the polygraph test.  Even once Agent Sullivan confronted Defendant, the preponderance of the evidence shows that Agent Sullivan's demeanor remained calm, and she and Defendant were speaking in a conversational tone.  Once Agent Grant entered the room, the preponderance of the evidence shows that he did nothing that could have overwhelmed Defendant's volition, but instead merely questioned Defendant in more detail than Agent Sullivan was able to do.  Much of what Defendant told the agents involved her explanation about her fear of Jasper Barber, his violence toward her when he had been drinking, and her defensive motivation in stabbing him.  The evidence does not support any conclusion that any actions by the two agents could have overwhelmed Defendant's will or forced an involuntary confession from her.

## CONCLUSION

In sum, after considering the factual context of Defendant's confession, including Defendant's personal traits and situation, the physical and temporal circumstances of the interview, and the conduct of the agents, the Court finds that the facts proven by the government show that Defendant's confession was voluntary.  Accordingly, Defendant's Motion to Suppress

Alleged Statement Purportedly Made to the FBI on July 8, 2010 is **DENIED**.

    **SO ORDERED**.

_____
UNITED STATES DISTRICT JUDGE