**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                   Case No. 11-CR-1876 WJ

PAULINE YAZZIE

        Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING UNITED STATES' MOTION TO EXCLUDE EXPERT TESTIMONY OF RICHARD LEO, PH.D.

THIS MATTER comes before the Court on the United States' Motion to Exclude Expert Testimony of Richard Leo, Ph.D. (**doc. 104**), filed July 31, 2012.[1]  Having considered the parties' submissions, and the arguments and evidence from the hearing on this matter held before the Court on August 30, 2012, the Court finds that the motion is well taken and, therefore, is **GRANTED**.

## BACKGROUND

In a letter to the Government dated July 27, 2012, Defendant identified Dr. Richard Leo ("Dr. Leo") as a defense expert.  The Government moved to exclude his testimony, in part because Defendant failed to timely identify her expert and provide qualifications and reports.[2]  On August 17, 2012, Defendant filed a Supplemental Rule 16(b)(1)(C) Expert Disclosure (**doc. 108**) giving notice of her intent to call Dr. Leo.  A professor of law at the University of San Francisco and former associate professor of psychology and criminology at the University of California, Irvine, Dr. Leo holds a J.D. and a Ph.D. in Jurisprudence and Social Policy,

---

[1] This Court held a hearing on this matter on August 30, 2012, and announced from the bench that the Government's motion was granted.  This opinion now contains the Court's ruling.
[2] Because the United States' motion is granted on the merits, the Court declines to address this argument.

specializing in Criminology and Social Psychology, both from the University of California, Berkeley.  His areas of research training and specialization include social psychology, criminology, sociology, and law.  He has conducted extensive empirical research on "police interrogation practices, *Miranda* requirements, the psychology of interrogations and confessions, psychological coercion, police-induced false confessions, and wrongful convictions," has written five books and numerous peer-reviewed articles based on this research, and received numerous awards.  Declaration of Dr. Richard A. Leo, Ph.D., J.D. (**doc. 108-1**).  He also teaches and lectures on the subjects of his research, and has been qualified as an expert witness 247 times in state, federal, and military courts.  *Id.*

Defendant seeks to have  Dr. Leo qualified as an expert witness on police interrogation practices, psychological coercion, and false confessions, to "educate the jury on police interrogation techniques, psychological issues involved in interrogation, why people may make false self-incriminating statements, and the research studies that have been done on these and related topics."  Response to United States' Motion to Exclude Expert Testimony of Richard Leo, Ph.D., J.D. (**doc. 115**).  The United States argues that Leo's testimony should be excluded as irrelevant and improper under *Daubert* and Rule 702, and more prejudicial than probative under Rule 403.

## LEGAL STANDARD

Expert testimony is admissible only if: (1) it is potentially helpful to the jury; (2) it is based upon sufficient facts or data; (3) it is the product of reliable principles and methods; and (4) the witness has applied the principles and methods reliably to the facts of the case.  *United States v. Baines*, 573 F.3d 979, 985 (10th Cir. 2009) (quoting Fed. R. Evid. 702).  It is the duty of the district court to ensure that any expert testimony "rests on a reliable foundation and is

relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). The burden of proof is on the proponent of the expert, in this case the Defendant. *Baines*, 573 F.3d at 985.  In *Daubert*, the Supreme Court set out a non-exhaustive list of factors that trial courts may consider in determining whether proposed expert testimony is based on reliable methods and principles: (1) whether the particular theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique has achieved general acceptance in the relevant scientific or expert community. *Id.* 593-94.

     *Daubert* itself was limited to scientific evidence, *see Baines*, 573 F.3d at 985, but in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court made clear that the gatekeeping obligation of the district courts described in *Daubert* applies, not just to scientific testimony, but to all expert testimony.  *Id.* at 141.  While a district court may consider the *Daubert* factors in determining the admissibility of non-scientific expert testimony to the extent they are relevant, *id.* at 150, "the test of reliability is flexible, and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case.  Rather, the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination."  *Id.* at 141-42.  The court is also to consider whether the witness' conclusion represents an "unfounded extrapolation" from the data; whether the witness has adequately accounted for alternative explanations for the effect at issue; whether the opinion was reached for the purposes of litigation or as the result of independent studies; or whether it unduly relies on anecdotal evidence.  *See Witherspoon v. Navajo Ref. Co., LP*, 2005 WL 5988649 at *3 (citing Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146, 118 S.Ct. 512,

139 L.Ed.2d 508 (1997)).  Under *Norris v. Baxter Healthcare Corp.*, the Court first assesses the

reliability of Dr. Leo's testimony, then addresses relevance.  397 F.3d 878, 883-84 (10th Cir.

2005) ("[A] district court must [first] determine if the expert's proffered testimony . . . has a

reliable basis in the knowledge and experience of his [or her] discipline. . . . Second, the district

court must further inquire into whether proposed testimony is sufficiently relevant to the task at

hand." (Citations to *Daubert* omitted.  Bracketed material added by Tenth Circuit.)).

## DISCUSSION

### I.  Dr. Leo's testimony is not reliable.

Dr. Leo is clearly highly credentialed in his field.  Courts have recognized the

phenomenon of false confessions and have cited Dr. Leo's articles about the phenomenon, and

social scientists generally accept the study of false confessions.  Nonetheless, this Court

concludes that as proffered here, Dr. Leo's testimony is unreliable.  In particular, the Court finds

that the testimony fails two of the *Daubert* reliability factors: "the known or potential rate of

error" and "whether it can be (and has been) tested."  509 U.S. at 593-94.

Dr. Leo testified that certain interrogation techniques, which he has labeled coercive, are

"risk factors," or identified with false confessions.  However, he stated that analyzing risk factors

in a given confession, as opposed to in a laboratory setting, cannot show causation of a false

confession, nor could he say that interrogation using techniques identified as coercive was "more

likely than not" to produce a false confession.  Rather, he testified that researchers do not have

the kind of data allowing them to predict the likelihood that a given interrogation technique will

lead to a false confession in real world cases.  *See Green v. City of Wenatchee*, CS-01-072-RHW,

2003 WL 26089744 (E.D. Wash. Mar. 14, 2003) (excluding proposed expert testimony because

the study of false confessions "has not reached the level of being able to accurately predict the

frequency and causes of false confessions or whether a certain technique of interrogation with a certain type of confessor will result in a predictable rate of false confessions. At most, it proves that false confessions do, in fact, occur").

In particular, Dr. Leo noted that the likelihood of a false confession depended in part on the nature of the person to whom coercive techniques were applied, or "dispositional factors" rather than "situational factors." However, he also testified that he was not a medical doctor or a clinical psychologist, and therefore he was not qualified (nor did he attempt) to evaluate dispositional factors rendering Defendant unusually susceptible to coercive interrogation techniques.

Additionally, Dr. Leo testified that he could only identify a confession as false when the defendant was exonerated by other means. That is, experts in this field analyze confessions that have already been determined to be false, and identify interrogation techniques common to those confessions. Because this after-the-fact analysis cannot prove that the presence of identified interrogation techniques caused a false confession, it provides no reliable means of determining the likelihood that a given confession is false. *See Norris*, 397 F.3d at 885 (case reports stating that some women with breast implants developed systemic disease were unreliable to prove that breast implants cause disease because "correlation does not equal causation").

**II.  Dr. Leo's proposed testimony about false confessions will not assist the trier of fact and encroaches on the jury's duty to assess credibility.**

The Court finds that even if Dr. Leo's proposed testimony were to be found reliable, it fails the second prong of the *Daubert* analysis addressing relevance. Two Tenth Circuit cases have addressed the admissibility of expert evidence about false confessions. In *United States v. Adams*, the defendant sought to introduce a psychologist's testimony that the defendant's "neurocognitive impairment and dependent personality structure . . . support[ed] the possibility

the statements he gave to the police were false." 271 F.3d 1236, 1244 (10th Cir. 2001). Citing

*Crane v. Kentucky*, 476 U.S. 683, 106, 106 S.Ct. 2412, 90 L.Ed.2d 636 (1986), the defendant

argued that the expert testimony was admissible as evidence of the reliability of the confession.

He also cited two out-of-circuit cases admitting such testimony, *United States v. Shay*, 57 F.3d

126, 132 (1st Cir. 1995), and *United States v. Hall*, 93 F.3d 1337, 1346 (7th Cir. 1996). The

Tenth Circuit concluded the evidence was inadmissible for three reasons:

> First, expert testimony which does nothing but vouch for the credibility of another
> witness encroaches upon the jury's vital and exclusive function to make
> credibility determinations, and therefore does not "assist the trier of fact" as
> required by Rule 702. Also, a proposed expert's opinion that a witness is lying or
> telling the truth might be inadmissible pursuant to Rule 702 because the opinion
> exceeds the scope of the expert's specialized knowledge and therefore merely
> informs the jury that it should reach a particular conclusion. Yet another rationale
> for exclusion is that the testimony of impressively qualified experts on the
> credibility of other witnesses is prejudicial, unduly influences the jury, and should
> be excluded under Rule 403.

*Id.* (internal quotation marks and citations omitted). The Circuit distinguished *Hall* and *Shay* on

the grounds that the defendants in those cases suffered from "a personality disorder [that] caused

him to confess" and "a mental disorder characterized by an extreme form of pathological lying,"

respectively, evidence that went to the voluntariness of their confessions. However, Adams had

no psychological condition and said that he had lied in his confession to protect his girlfriend.

Because this was "precisely the type of explanation that a jury is capable of resolving without

expert testimony," and the offered testimony "does little more than 'vouch for the credibility of

another witness' and thereby 'encroaches upon the jury's vital and exclusive function to make

credibility determinations,'" the Circuit upheld the exclusion.

In *United States v. Benally*, 541 F.3d 990, 993-94 (10th Cir. 2008), the defendant sought

to introduce expert psychological testimony addressing "(1) whether false confessions occur; and

(2) why people confess falsely," to "overcome the perception that sane people either do not

confess falsely, or do so only rarely." The expert "had never examined [the defendant], and would not offer an opinion as to whether he confessed falsely," but the defendant argued that this testimony about the general phenomenon of false confessions would place his testimony about the circumstances of his own interrogation "into a broader, more believable context." *Id.* The Tenth Circuit concluded that although the defendant's limitation of the evidence addressed its concern in *Adams* that "the opinion exceeds the scope of the expert's specialized knowledge," it failed to solve the other problems identified there. *Id.* at 995. First, even absent an expressed opinion on the defendant's credibility, the evidence would usurp the jury's function to assess credibility, because "the import of [the expert's] testimony would be the same: disregard the confession and credit the defendant's testimony that his confession was a lie." *Id.* Second, the evidence failed to satisfy Rule 403. Its probative value was minimal, because the expert "did not examine [the defendant], and was not going to specifically discuss him or the circumstances surrounding his confession in her testimony," and substantially outweighed by the prejudice "that would result from permitting an expert to opine that prior confessions should essentially be disregarded because they are just as likely to be true as untrue." *Id.*

*Benally* also distinguished *Shay* and *Hall*, noting that they "stand only for the proposition that expert testimony regarding the voluntariness of a confession is admissible when the expert will testify to the existence of the defendant's identifiable medical disorder that raises a question regarding the defendant's cognitive voluntariness." *Id.* at 996. The Circuit found them inapposite because "[the defendant] does not identify a medical condition that contributed to his decision to confess." *Id.*

Defendant fails to show how Dr. Leo's proposed testimony differs from the testimony proposed in *Adams* and *Benally*. Defendant notes that Dr. Leo "will not offer an opinion as to

Ms. Yazzie's credibility or the truth or falsity of any specific statements Ms. Yazzie made."

Defendant's Response to United States' Motion to Exclude Expert Testimony of Richard Leo,

Ph.D., J.D. (**doc. 115**)  However, here, as in *Benally*, the "import" of his testimony would be to

tell the jury they should "disregard the confession and credit the defendant's testimony that [her]

confession was a lie."[3]  *Benally*, 541 F.3d at 995. Similarly, Dr. Leo's testimony amounts to the

contention that "prior confessions . . . are just as likely to be true as untrue" found impermissible

in *Benally*.  Nor will Dr. Leo testify that she suffers from any "identifiable medical disorder that

raises a question regarding [her] cognitive voluntariness."

Defendant's reliance on *United States v. Ganadonegro*, 805 F.Supp.2d 1188, 1212

(D.N.M. 2011) is unavailing.  There, the defendant sought to offer expert psychological

testimony that he was susceptible to making false admissions because he possessed low verbal

skills, deficits in attention and concentration, a tendency to misperceive events, low self-esteem,

limited self-confidence, and a tendency to depression.  *Id.* at 1194.  United States District Judge

James O. Browning excluded the expert testimony "insofar as it relates to the credibility" of the

defendant's statements, finding that

> [although] the Court agrees that the defendant should be able to proffer a
> psychological expert to explain to the jury that some defendants give, for
> whatever reason, false confessions to a crime, and that the defendant has
> psychological traits that make it possible he would give a false confession . . . the
> Court is not writing on a clean slate.  The Tenth Circuit has, in two published
> opinions, excluded [such] testimony . . .

*Id.* at 1212.  Thus, *Ganadonegro* concluded that *Adams* and *Benally* required excluding evidence

about the general phenomenon of false confessions.

---

[3] In light of the Tenth Circuit's recently released opinion in *United States v. Turrietta*, one could even call Dr. Leo a modern-day compurgator.  No. 11-2033, slip op. at *15 (10th Cir. Aug. 29, 2012) ("In more elaborate proceedings, parties [historically] produced oath helpers, or compurgators, to vouch for the credibility of their positions.").

Judge Browning did admit evidence of the defendant's psychological condition and mental traits "insofar as it relates to the voluntariness" of the defendant's statements to law enforcement officers. *Id.* at 1213. However, in *Ganadonegro* the expert witness was qualified to, and did, offer testimony about the defendant's mental defects and personality traits, or the "dispositional" risk factors. Here, Dr. Leo testified that his research does not focus on dispositional risk factors, he relies on other expert reports about dispositional factors, and he had not considered Defendant's psychological conditions or personality traits. His proffered testimony speaks only to the nature of police interrogations generally and defendant's interrogation specifically, and does not evaluate why Defendant would be particularly susceptible to false confessions. *See United States v. Mamah*, 00 CR 396, 2002 WL 34358182 (N.D. Ill. Feb. 4, 2002) *aff'd*, 332 F.3d 475 (7th Cir. 2003) (upholding exclusion of expert in part because expert, "a sociologist, does not appear to be qualified as a psychologist or able to address [the defendant]'s psychological condition or his susceptibility, if any, to any of the allegedly persuasive or coercive techniques of interrogation."); *c.f. United States v. Raposo*, 98 CR. 185 (DAB), 1998 WL 879723 (S.D.N.Y. Dec. 16, 1998) (allowing expert testimony about defendant's psychological condition by a credentialed clinical psychologist who properly administered tests generally accepted in the scientific community, on the ground that his testimony would help the jury understand "that an individual with a certain psychological profile could be more susceptible than other members of the general population to making a false confession"). Hence, *Ganadonegro* does not support admitting Dr. Leo's testimony here.

**THEREFORE, IT IS ORDERED** that the United States' Motion to Exclude Expert Testimony of Richard Leo, Ph.D. (doc. 104) is hereby **GRANTED** for the reasons set forth in this Memorandum Opinion and Order.

_____

UNITED STATES DISTRICT JUDGE